UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

CHRISTIAN RODRIGUEZ, JASON BRINK, and BRANDON SARGEANT,

Plaintiffs,

- against-

MAYA HAYES, ANDREA CURRY, GARY PATTMAN, PATRICK HAGGERTY, AMANDA GRIMES, MICHAEL DOMINOWSKI, THOMAS GRANDINETTI, JEANNE BORROMEO-OTTY, JENNIFER ALONGI, KAREN MICKLE, HEATHER PAKATAR, TED STELLS, AND JANE AND JOHN DOES 1-10,

Defendants.

-----------------------------------------------------------------x

Docket No.: 7:23-CV-10122

**FIRST AMENDED COMPLAINT**
**JURY TRIAL DEMANDED**

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Christian Rodriguez ("Christian"), Jason Brink ("Jason"), and Brandon Sargeant ("Brandon") (collectively, "Plaintiffs"), by and through their undersigned counsel, Brustein Law, P.L.L.C. and Conde Law Firm PLLC, as and for their Amended Complaint in this action against Defendants Maya Hayes ("Hayes"), Andrea Curry ("Curry"), Gary Pattman ("Pattman"), Patrick Haggerty ("Haggerty"), Amanda Grimes ("Grimes"), Michael Dominowski ("Dominowski"), Thomas Grandinetti ("Grandinetti"), Jeanne Borromeo-Otty ("Borromeo-Otty"), Jennifer Alongi ("Alongi"), Karen Mickle ("Mickle"), Heather Pakatar ("Pakatar"), Ted Stells ("Stells"), and Jane and John Does 1-10 (collectively, "Defendants"), hereby allege as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiffs' rights under 42 U.S.C. 1983. The Court has supplemental jurisdiction over Plaintiffs' related claims arising under state law pursuant to 28 U.S.C. § 1367(a).

2. Venue is proper in this district pursuant to 28 U.S.C. 1391(b) because Plaintiff CHRISTIAN lives in this District and, upon information and belief, all Defendants reside in the State of New York.

**PARTIES**

3. At all times relevant herein, CHRISTIAN was in the custody of Brookwood Youth Facility ("Brookwood"). He has maintained his primary residence in Westchester, New York.

4. At all times relevant herein, JASON was in the custody of Brookwood. He currently resides at Five Points Correctional Facility, 6600 State Route 96, Romulus, New York.

5. At all times relevant herein, BRANDON was in custody at Brookwood. He currently resides in New York, New York.

6. Upon information and belief, Brookwood was a youth detention facility controlled by the Office of Family Services (OCFS) of the State of New York.

7. At all times material, Defendants were employed by Brookwood as an employees/qualified contractors of/had privileges at and/or otherwise were agents of the State of New York.

8. Upon information and belief, Defendant Hayes was hired to provide mental health treatment as a clinician and/or psychologist to youth in residential treatment at Brookwood (in, at least, Wing 5 at Brookwood).

9. Upon information and belief, Defendant Curry was a counselor/case manager in Wing 5 at Brookwood.

10. Upon information and belief, Defendant Haggerty was a supervisor in Wing 5 at Brookwood.

11. At all relevant times, Defendant Pattman was the Director of Brookwood (and thus a supervisor of Wing 5 of Brookwood).

12. Upon information and belief, at all relevant times, Defendant Grimes was the Agency Compliance Manager at Brookwood.

13. Upon information and belief, at all relevant times, Defendant Dominowski was a Youth Counselor at Brookwood.

14. Upon information and belief, at all relevant times, Defendant Grandinetti was the Assistant Director at Brookwood.

15. Upon information and belief, at all relevant times, Defendant Borromeo-Otty was an Assistant

Director for Treatment at Brookwood.

16. Upon information and belief, at all relevant times, Defendant Alongi was an Assistant Director for Treatment at Brookwood.

17. Upon information and belief, at all relevant times, Defendant Mickle was the Facility Medical Administrator at Brookwood.

18. Upon information and belief, at all relevant times, Defendant Pakatar was a Facility Health Service Administrator On-Site at Brookwood.

19. Upon information and belief, at all relevant times, Defendant Stells was a Facility Health Service Administrator On-Site at Brookwood.

20. At all times relevant, Jane and John Does 1-10 were employed by Brookwood as employees/qualified contractors of/had privileges at and/or otherwise were agents of the State of New York.

21. Defendants Curry, Haggerty, Pattman, Grimes, Dominowski, Grandinetti, Borromeo-Otty, Alongi, Mickle, Pakatar, Stells, and Jane and John Does 1-10 are hereinafter referred to, collectively, as the "Enabling Defendants."

## **FACTUAL ALLEGATIONS**

22. Upon information and belief, Defendant Hayes initially was assigned an office to see residents one on one in Wing 5 at Brookwood, which had a surveillance camera in it.

23. Defendant Hayes was permitted to switch offices – within Wing 5 at Brookwood – to a room that had no surveillance cameras in it.

24. Defendant Hayes' new office had a door with a glass window on the top half of the door.

25. Even though the glass windows were required to be kept clear throughout Brookwood for the safety of the staff and residents, Defendant Hayes was permitted to place papers on the glass portion of her door, preventing passersby from having an unobstructed view into her office.

26. Even though the glass was primarily obstructed, it was still possible to see into the office.

27. Defendant Hayes sexually abused Plaintiffs, as further described below.

28. Upon information and belief, Plaintiffs were not the only residents sexually abused by Hayes.

29. Upon information and belief, Plaintiffs were not the first residents sexually abused by Hayes.

**I. CHRISTIAN**

30. CHRISTIAN was born in January 2004.

31. CHRISTIAN was sixteen (16) years old when he was confined to Brookwood.

32. CHRISTIAN was confined to Brookwood from October 2020 - July 26, 2021.

33. As part of his recovery and program, CHRISTIAN was assigned to Defendant Hayes as a counselor and clinician.

34. CHRISTIAN was only scheduled for counseling with Defendant Hayes 1 - 2 times per week.

35. Instead, Defendant Hayes frequently requested that CHRISTIAN come out of his classroom at random times during his school day, sometimes on a daily basis or even multiple times on the same day.

36. Defendant Hayes would have CHRISTIAN go into her office at unscheduled times.

37. Defendant Hayes told CHRISTIAN that he resembled another boy, that he was cute, and that his hair was beautiful.

38. Defendant Hayes told CHRISTIAN that Defendant Hayes had given "blow jobs" to this other boy.

39. Defendant Hayes during her appointments asked CHRISTIAN, "Do you like big boobs?"

40. At various times, Defendant Hayes would lift her shirt and show her breasts to CHRISTIAN.

41. These interactions made CHRISTIAN incredibly uncomfortable.

42. Defendant Hayes requested that CHRISTIAN squeeze her breasts, and to squeeze them harder if he was not squeezing her breasts hard enough.

43. During his visits, Defendant Hayes would routinely rub CHRISTIAN's hair and have him touch her breasts.

44. Defendant Hayes sometimes put braids in CHRISTIAN's hair.

45. On one particular occasion, Defendant Hayes looked at the groin area of CHRISTIAN's sweatpants and said, "God damn!"

46. Defendant Hayes asked if CHRISTIAN's penis was big and grabbed his penis with her hand.

47. CHRISTIAN was extremely embarrassed and did not want Defendant Hayes to touch him or discuss his private parts.

48. During many of the visits, Defendant Hayes would make CHRISTIAN touch her breasts and conducted manual and oral stimulation on CHRISTIAN's penis causing him to ejaculate in her mouth.

49. On one occasion, Defendant Hayes lifted her shirt and grabbed her breasts with one hand and put her other hand down her own pants and removed her fingers showing CHRISTIAN that her fingers were "gooey." She then placed her fingers in her mouth and proceeded to suck the "goo" from her fingers.

50. CHRISTIAN felt trapped by Defendant Hayes and had no choice but to comply with her sexual abuse.

51. Defendant Hayes threatened to write negative parole reports if CHRISTIAN did not do what he was told to do.

52. Defendant Hayes' manipulation was not limited to her sexual abuse and control over CHRISTIAN.

53. Defendant Hayes ordered the CHRISTIAN to "jump" or fight other youth.

54. CHRISTIAN did not report the abuse at the time because Defendant Hayes threatened to sabotage his reviews with the Parole Board and to make his life a living hell.

55. Defendant Hayes told CHRISTIAN that she was required to make a report to the Parole Board and her report determined if he got out of lock up or had to stay longer.

56. CHRISTIAN, during his initial intake with Defendant Hayes, was sexually groomed, exploited and abused by Defendant Hayes, telling him how cute he looked and continued during the course of Defendant Hayes' employment.

57. At all relevant times, the Enabling Defendants allowed Defendant Hayes to use offices or rooms on its premises, which Defendant Hayes then used to sexually abuse CHRISTIAN and other minors and/or children at Brookwood.

58. At all relevant times, the Enabling Defendants knew that this reckless, extreme, and outrageous conduct would inflict severe emotional and psychological distress, as well as inflicting personal physical injury, on CHRISTIAN.

59. At all relevant times, the Enabling Defendants engaged in reckless, extreme, and outrageous conduct by providing Defendant Hayes with access to its youth, including CHRISTIAN, despite knowing that she would likely use her position to groom and to sexually abuse children, including CHRISTIAN.

60. Defendant Hayes groomed and manipulated CHRISTIAN into trusting that what she was doing had some basis in legitimate care and treatment. It did not. Defendant Hayes embarked on a campaign of grooming CHRISTIAN by continually touting her background and credentials.

61. Beginning with CHRISTIAN's initial office visit with Defendant Hayes, she began subjecting him to a course of predatory grooming, boundary violating, mental, emotional, and physical sexual abuse.

62. Defendant Hayes' approach to grooming CHRISTIAN was a mix of being authoritative, awkward, self-deprecating, disarming, self-pitying, alarming, fear mongering, and overtly offensive. Defendant Hayes' misconduct tracks classic and well-established grooming techniques.

63. During several, if not all, of CHRISTIAN's appointments with Defendant Hayes, she conducted multiple, prolonged, serial, clinically inappropriate, and unwarranted counseling sessions wherein Defendant Hayes would demand that CHRISTIAN touch her body parts for sexual gratification, or touch his body parts for gratification; and to further ask him to stand in awkward positions in front or near her. Defendant Hayes encouraged CHRISTIAN to be touched inappropriately and cause him further humiliation, shame, and embarrassment, all to CHRISTIAN's detriment. Defendant Hayes disguised barbaric, sadistic, and clinically inappropriate clinical sessions for the purpose of her own deviant sexual gratification and prurient desires.

64. While performing the serial, prolonged, clinician interviews and unnecessary appointments, Defendant Hayes would continue to groom residents, including CHRISTIAN. Defendant Hayes would routinely perform her invasive and prolonged "counseling" sessions of children in order to access their bodies. These exams were conducted in a manner inconsistent with clinical standards.

65. CHRISTIAN has endured, and continues to endure, severe emotional and psychological distress, including personal physical injury, and CHRISTIAN did in fact suffer severe mental anguish, shame,

embarrassment, humiliation, emotional and physical distress, economic harm (including a loss of ability to gain employment) and indescribable conflict and confusion due to his inability to comprehend the reasons and level of depravity of the abuse inflicted upon him by Defendant Hayes.

66. At all times relevant to CHRISTIAN's experiences with Defendant Hayes, Defendant Hayes was well-aware of the cognitive dissonance that her youthful client – who she was sexually abusing – would experience with regard to his inability to come to grips with the unfathomable idea that his own clinician was sexually exploiting and abusing him.

67. Defendant Hayes used and exploited her position of trust and authority (bestowed on her by the State of New York and the Enabling Defendants) to her disgusting advantage and her own depraved benefit, and in furtherance of her scheme to sexually abuse and exploit as many children as possible under the guise of performing routine and necessary counseling sessions.

68. The fallout of Defendants' betrayal of CHRISTIAN has caused widespread and longstanding sequela including, but not limited to, a distrust of healthcare providers, distrust of others in her personal and professional life, and a complete distrust of any outsiders.

69. As a result of the aforementioned, Defendant Hayes was able (and enabled by the Enabling Defendants) to sexually abuse countless young children and residents of Brookwood in a serial fashion, while carrying out her sick and disturbing fantasies surrounding sexual abuse.

70. Defendant Hayes' sexual exploitation and abuse of children, including CHRISTIAN, constitutes various crimes and felonies under New York Law including, but not limited to, the crimes of sexual abuse in the first degree (P.L. § 130.65), sexual abuse in the third degree (P.L. § 130.55), sexual misconduct (P.L. § 130.20), forcible touching (P.L. § 130.52), and other criminal sexual offenses under Article 130 of the Penal Law.

**II. JASON**

71. JASON was born in December 2003.

72. JASON was fifteen (15) years old when he was confined to Brookwood.

73. JASON was confined to Brookwood from October 21, 2019 - June 10, 2022.

74. As part of his youth program, JASON was transferred to Wing 5, and while there he was assigned to Defendant Hayes, a counselor and clinician.

75. JASON was supposed to have counseling with Defendant Hayes 1-2 times per week.

76. Instead, Defendant Hayes frequently requested that JASON come out of his classroom or cell at random times during his school day.

77. During a clinical session, Defendant Hayes told JASON that she had a dream about having sex with him.

78. JASON was first physically sexually assaulted by Defendant Hayes in Room #1, the Youth Counsel Classroom.

79. At that time, Defendant Hayes pulled down JASON's sweatpants and manipulated JASON's penis with her hand causing him to ejaculate.

80. JASON was extremely embarrassed and did not want Defendant Hayes to touch him or discuss his private parts.

81. Thereafter, Mr. Hayes would continue to manually and orally manipulate JASON's penis to ejaculate multiple times per week.

82. Defendant Hayes frequently told JASON that she wanted to have sexual intercourse with him, but she wanted to wait until he was 18 years old.

83. Defendant Hayes showed her breasts to JASON.

84. On one occasion, Defendant Hayes put her hands down her pants and showed JASON that her vagina was wet.

85. Defendant Hayes would perform oral sex on JASON and would swallow JASON's ejaculation.

86. Over the course of the sexual abuse, Defendant Hayes performed oral sex on JASON more than twenty (20) times.

87. Defendant Hayes said that because she was sexually frustrated at home, Defendant Hayes wanted to give oral sex to residents.

88. Defendant Hayes said it was her fantasy and it gave her a rush to give residents "blow jobs."

89. Defendant Hayes also ordered Plaintiff JASON to fight three or four other residents on her behalf.

90. JASON was threatened by Defendant Hayes that if he did not fight other residents, Defendant Hayes would have him jumped and it would affect his Parole Board reviews.

91. JASON did not report the abuse at the time because Defendant Hayes threatened to mess up his Parole Board reviews with negative information.

92. JASON, during his initial intake with Defendant Hayes (and thereafter), was sexually groomed, exploited and abused by Defendant Hayes.

93. At all relevant times, the Enabling Defendants allowed Defendant Hayes to use offices or rooms on their premises, which Defendant Hayes then used to sexually abuse JASON and other residents of Brookwood.

94. At all relevant times, the Enabling Defendants knew that this reckless, extreme, and outrageous conduct would inflict severe emotional and psychological distress, including personal physical injury, on JASON.

95. At all relevant times, the Enabling Defendants engaged in reckless, extreme, and outrageous conduct by providing Defendant Hayes with access to its youth, including JASON, despite knowing that she would likely use her position to groom and to sexually abuse its residents, including JASON.

96. Defendant Hayes groomed and manipulated JASON into trusting that what she was doing had some basis in legitimate care and treatment. It did not. Defendant Hayes embarked on a campaign of grooming JASON by continually touting her background and credentials.

97. Beginning with JASON's initial office visit as a resident and continuing thereafter, Defendant Hayes began subjecting JASON to a course of predatory grooming, boundary violating, mental, emotional, and physical sexual abuse.

98. Defendant Hayes' approach to grooming JASON was a mix of being authoritative, awkward, self-deprecating, disarming, self-pitying, alarming, fear mongering, and overtly offensive. Defendant Hayes' misconduct tracks classic, and well-established grooming techniques.

99. During several, if not all, of JASON's appointments with Defendant Hayes, Defendant Hayes conducted multiple, prolonged, serial, clinically inappropriate and unwarranted counseling sessions, wherein Defendant Hayes would demand that JASON touch her body parts for sexual gratification or touch his body parts for gratification; and to further ask him to stand in awkward positions in front or near her. Defendant Hayes encouraged JASON to be touched inappropriately and causing further humiliation, shame and embarrassment all to JASON's detriment. Defendant Hayes disguised barbaric, sadistic, and clinically inappropriate therapy sessions for the purpose of Defendant Hayes' own deviant sexual gratification and prurient desires.

100. While performing the serial, prolonged, clinician interviews and unnecessary appointments, Defendant Hayes would continue to groom JASON. Defendant Hayes would routinely perform her invasive and prolonged "counseling" sessions of youths in order to access their bodies. These exams were conducted in a manner inconsistent with clinical standards.

101. JASON has endured, and continues to endure, severe emotional and psychological distress, including personal physical injury, and JASON did in fact suffer severe mental anguish, shame, embarrassment, humiliation, emotional and physical distress, and indescribable conflict and confusion due to his inability to comprehend the reasons and level of depravity of the abuse inflicted upon him by Defendant Hayes.

102. At all times relevant to JASON's experiences with Defendant Hayes, Defendant Hayes was well-aware of the cognitive dissonance that her youthful client – who she was sexually abusing – would experience with regard to his inability to come to grips with the unfathomable idea that his own clinician was sexually exploiting and abusing him.

103. Defendant Hayes used and exploited her position of trust and authority (bestowed on her by the State of New York) to her disgusting advantage and her own depraved benefit, and in furtherance of her scheme to sexually abuse and exploit as many youths as possible under the guise of performing routine and necessary counseling sessions.

104. The fallout of Defendant Hayes' betrayal of JASON has caused wide and longstanding sequela including, but not limited to a distrust of healthcare providers, distrust of others in his personal life, and a complete distrust of any outsiders.

105. As a result of the aforementioned, Defendant Hayes was able to (and enabled by the Enabling Defendants) sexually abuse countless children and residents of Brookwood in a serial fashion, while carrying out her sick and disturbing fantasies surrounding sexual abuse.

106. Defendant Hayes sexual exploitation and abuse of children, including JASON, constitutes various crimes and felonies under New York Law including, but not limited to, the crimes of sexual abuse in the first degree (P.L. § 130.65), sexual abuse in the third degree (P.L. § 130.55), sexual misconduct (P.L. § 130.20), forcible touching (P.L. § 130.52), and other criminal sexual offenses under Article 130 of the Penal Law.

**III. BRANDON**

107. BRANDON was born in November 2002.

108. BRANDON was eighteen (18) years old when he was confined to Brookwood.

109. BRANDON was confined to Brookwood from April 2021 - September 27, 2021.

110. As part of his youth program, BRANDON was assigned to Wing 5, and was assigned Defendant Hayes as his counselor and clinician.

111. BRANDON was supposed to have counseling with Defendant Hayes 1-2 times per week.

112. Defendant Hayes would take BRANDON out of his class on an almost daily basis.

113. Defendant Hayes would even come on her days off to see BRANDON and other residents in her office.

114. During his counseling sessions, Defendant Hayes would show BRANDON YouTube videos.

115. Defendant Hayes downloaded audios onto an mp3 player of people having loud sex and gave it to BRANDON.

116. Defendant Hayes grabbed his hands during visits and forced him to fondle her breasts.

117. BRANDON was extremely embarrassed and did not want to touch Defendant Hayes' private parts.

118. Defendant Hayes became excited when she saw BRANDON's ex-girlfriend's name "Maya" tattooed on his right arm.

119. During one visit, Defendant Hayes began grabbing BRANDON's penis over his pants.

120. BRANDON was extremely embarrassed and did not want Defendant Hayes to touch him or discuss his private parts.

121. After BRANDON did not report her, Defendant Hayes began having BRANDON come to her office much more frequently and got more physical with him.

122. During visits, Defendant Hayes would grab BRANDON's testicles and perform oral sex on him.

123. Defendant Hayes grabbed BRANDON's testicles around ten (10) different times inside of her office.

124. During his visits, Defendant Hayes would show BRANDON her breasts and body and say sexual things.

125. BRANDON was forced to touch her vagina over her clothes.

126. Defendant Hayes touched her vagina under her clothes and would put her fingers in her mouth.

127. BRANDON did not report the abuse at the time because Defendant Hayes threatened to mess up his Parole Board reviews with negative information.

128. Defendant Hayes also gave additional privileges to BRANDON like use of her computer and phone if he did not complain and kept doing what she demanded.

129. Defendant Hayes continued sexually abusing BRANDON until he left Brookwood at the end of September 2021.

130. BRANDON, during his initial intake with Defendant Hayes (and thereafter), was sexually groomed, exploited, and abused by Defendant Hayes.

131. At all relevant times, the Enabling Defendants enabled BRANDON's abuse by their acts and omissions.

132. Defendant Hayes groomed and manipulated BRANDON into trusting that what she was doing had some basis in legitimate care and treatment. It did not. Defendant Hayes embarked on a campaign of grooming BRANDON by continually touting her background and credentials.

133. Beginning with BRANDON's initial office visit as a resident, Defendant Hayes began subjecting him to a course of predatory grooming, boundary violating, and mental, emotional, and physical sexual abuse.

134. Defendant Hayes' approach to grooming BRANDON was a mix of being authoritative, awkward, self-deprecating, disarming, self-pitying, alarming, fear mongering, and overtly offensive. Defendant Hayes' misconduct tracks classic and well-established grooming techniques.

135. During several, if not all, of BRANDON's appointments with Defendant Hayes, Defendant Hayes conducted multiple, prolonged, serial, clinically inappropriate and unwarranted counseling sessions, wherein Defendant Hayes would demand that BRANDON touch her body parts for sexual gratification or touch his body parts for gratification; and to further ask him to stand in awkward positions in front or near her. Defendant Hayes encouraged BRANDON to be touched inappropriately and caused further humiliation, shame and embarrassment all to Plaintiff BRANDON's detriment. Defendant Hayes disguised barbaric, sadistic, and clinically inappropriate therapy sessions for the purpose of Defendant Hayes' own deviant sexual gratification and prurient desires.

136. While performing the serial, prolonged, clinician interviews and unnecessary appointments, Defendant Hayes would continue to groom BRANDON. Defendant Hayes would routinely perform her invasive and prolonged "counseling" sessions of youths in order to access their bodies. These exams were conducted in a manner inconsistent with clinical standards.

137. BRANDON has endured, and continues to endure, severe emotional and psychological distress, including personal physical injury, and BRANDON did in fact suffer severe mental anguish, shame, embarrassment, humiliation, emotional and physical distress, and indescribable conflict and confusion due to his inability to comprehend the reasons and level of depravity of the abuse inflicted upon him by Defendant Hayes.

138. At all times relevant to BRANDON's experiences with Defendant Hayes, Defendant Hayes was well-aware of the cognitive dissonance that her youthful client – who she was sexually abusing – would experience with regard to his inability to come to grips with the unfathomable idea that his own clinician was sexually exploiting and abusing him.

139. The fallout of Defendant's betrayal of BRANDON has caused wide and longstanding sequela including, but not limited to a distrust of healthcare providers, distrust of others in his personal and professional life, and a complete distrust of any outsiders.

140. As a result of the aforementioned, Defendant Hayes was able (and enabled by the Enabling Defendants) to sexually abuse countless children and residents of Brookwood in a serial fashion, while carrying out her sick and disturbing fantasies surrounding sexual abuse.

141. Defendant Hayes' sexual exploitation and abuse of individuals, including BRANDON, constitutes various crimes and felonies under New York Law including, but not limited to, the crimes of sexual abuse in the first degree (P.L. § 130.65), sexual abuse in the third degree (P.L § 130.55), sexual misconduct (P.L. § 130.20), forcible touching (P.L. § 130.52), and other criminal sexual offenses under Article 130 of the Penal Law.

142. At all times, Defendants acted under color of law.

143. Even though Defendant Hayes was only supposed to see residents once or twice a week, Defendant Hayes would take some residents out of their classes much more frequently for prolonged visits in her office.

144. There was no legitimate purpose for Defendant Hayes to be constantly removing Plaintiffs or any of the other residents from their classes as frequently as she did.

145. As part of her sexual abuse of Plaintiffs, Defendant Hayes would position Plaintiffs in her office in such a way that they would be hidden from view as she sexually molested them.

146. Upon information and belief, part of the safety protocols at Brookwood required staff, residents and visitors to always be completely visible through the glass portions of the doors.

147. The Enabling Defendants permitted Defendant Hayes to not only obstruct the visibility of her

office, but to position herself or residents, including Plaintiffs, in such a way that they were hidden from view.

148. Even though the glass was primarily obstructed, it was still possible to see into the office.

149. The Enabling Defendants, who passed Defendant Hayes' office when Plaintiffs or other residents were inside her office, should have known the Defendant Hayes was violating Brookwood policies, if they were unable to see both Defendant Hayes and the resident.

150. By not reporting Defendant Hayes for having residents in her office behind an obstructed window, the Enabling Defendants were complicit in the sexual assaults of Plaintiffs and the other residents. The Enabling Defendants at Brookwood knew or should have known that Defendant Hayes was acting inappropriately with the residents, including Plaintiffs.

151. Defendant Hayes told CHRISTIAN that she had given another resident "blow jobs" before CHRISTIAN had been in the facility.

152. Defendant Hayes told JASON about another resident who always came to her office and had broken her heart and how cute he was.

153. BRANDON saw a picture of JASON in Defendant Hayes' office.

154. The Enabling Defendants are therefore as liable as Defendant Hayes for the harm inflicted upon Plaintiffs and other residents.

155. After staff discovered that another resident was one of her prey, they made jokes about him and Defendant Hayes. Specifically, "Are you doing things with Big Foot? We see you in there with Dr. Hayes doing nasty stuff."

**DUTIES AND REASONABLE FORSEEABILITY**

156. Plaintiff repeats and realleges by reference every statement and allegation set forth above as if fully set forth herein.

157. At all times herein, Defendant Hayes was under the direction, supervision, authority and control of Enabling Defendants.

158. Upon information and belief, Plaintiffs herein were not the first resident sexually abused by

Defendant Hayes.

159. Even though Defendant Hayes was only supposed to see residents once or twice a week, Defendant Hayes would take some residents out of their classes much more frequently for prolonged visits in her office.

160. There was no legitimate purpose for Defendant Hayes to be constantly removing Plaintiff or any of the other residents from their classes as frequently as she did.

161. As part of her sexual abuse of Plaintiff, Defendant Hayes would position Plaintiff in her office in such a way that they would be hidden from view as she sexually molested him.

162. Upon information and belief, part of the safety protocols at Brookwood required staff, residents, and visitors to always be visible through the glass portions of the doors.

163. Brookwood and the Individual Enabling Defendants permitted Defendant Hayes to not only obstruct the visibility of her office, but to position herself or residents, including Plaintiff, in such a way that they were hidden from view.

164. John Does 1-10, who passed Defendant Hayes' office when Plaintiff or other residents were inside her office, should have known the Defendant Hayes was violating Brookwood policies, if they were unable to see both Defendant Hayes and the resident.

165. By not reporting Defendant Hayes for having residents in her office behind an obstructed window, the Enabling Defendants were complicit in the sexual assaults of Plaintiff and the other residents.

166. The Enabling Defendants knew or should have known that Defendant Hayes was acting inappropriately with the residents, including Plaintiff.

167. The Enabling Defendants are therefore as liable as Defendant Hayes for the harm inflicted upon Plaintiff and the other residents.

168. At all times herein, Enabling Defendants were responsible for ensuring and providing for protection and safety, including protection from sexual abuse, of its inmates, including the Plaintiff.

169. At all times, Enabling Defendants owed to the inmates, including the Plaintiff, a duty to use

reasonable care to protect inmates, including Plaintiff, form reasonable foreseeable harm.

170. At all times relevant herein, Enabling Defendants had a duty to report to law enforcement or the appropriate authorities any knowledge, suspicion, and information regarding any incident of sexual abuse or sexual harassment of inmates by personnel or staff.

171. At all relevant times, the Enabling Defendants knew that this reckless, extreme, and outrageous conduct would inflict severe emotional and psychological distress, including personal physical injury, on Plaintiff.

172. At all relevant times, the Enabling Defendants engaged in reckless, extreme, and outrageous conduct by providing Defendant Hayes with access to youth, including Plaintiff, despite knowing that she would use her position to groom and to sexually abuse children, including Plaintiff.

173. Defendant Hayes groomed and manipulated Plaintiff into trusting that what she was doing had some basis in legitimate care and treatment. It did not. Defendant Hayes embarked on a campaign of grooming Plaintiff by continually touting her background and credentials while cloaking herself in the "prestige" of being an employee of the State of New York.

174. Defendant Hayes subjected Plaintiff to a course of predatory grooming, boundary violating, mental, emotional, and physical sexual abuse.

175. Defendant Hayes' approach to grooming Plaintiff was a mix of being authoritative, awkward, self-deprecating, disarming, self-pitying, alarming, fear mongering, and overtly offensive. Defendant Hayes' misconduct tracks classic and well-established grooming techniques.

176. Defendant Hayes disguised barbaric, sadistic, and clinically inappropriate clinical sessions for the purpose of Defendant Hayes' own deviant sexual gratification and prurient desires.

177. While performing the serial, prolonged, clinician interviews and unnecessary appointments, Defendant Hayes would continue to groom the resident. Defendant Hayes would routinely perform her invasive and prolonged "counseling" sessions of children in order to access their bodies. These exams were conducted in a manner inconsistent with clinical standards.

178. Plaintiff has endured, and continues to endure, personal physical injury and severe emotional and

psychological distress, and Plaintiff did in fact suffer severe mental anguish, shame, embarrassment, humiliation, emotional and physical distress, indescribable conflict and confusion due to his inability to comprehend the reasons and level of depravity of the abuse inflicted upon him by Defendant Hayes.

179. At all times relevant to Plaintiff's experiences with Defendant Hayes, Defendant Hayes was well-aware of the cognitive dissonance that her youthful client – who she was sexually abusing – would experience with respect to their inability to come to grips with the unfathomable idea that his own clinician was sexually exploiting and abusing him.

180. Defendant Hayes used and exploited her position of trust and authority bestowed on her by the State of New York and the Enabling Defendants to her disgusting advantage and her own depraved benefit, and in furtherance of her scheme to sexually abuse and exploit as many children as possible under the guise of performing routine and necessary counseling sessions.

181. The fallout of Defendants' betrayal of Plaintiff has caused wide and longstanding sequela including, but not limited to, a distrust of healthcare providers, distrust of others in his personal and professional life, and a complete distrust of any outsiders.

182. As a result of the aforementioned, Defendant Hayes was able (and enabled by Enabling Defendants) to sexually abuse countless young children and residents of Brookwood in a serial fashion, while carrying out her sick and disturbing fantasies surrounding sexual abuse.

183. Defendant Hayes' sexual exploitation and abuse of children, including Plaintiff, constitutes various crimes and felonies under New York Law including, but not limited to, the crimes of sexual abuse in the first degree (P.L. § 130.65), sexual abuse in the third degree (P.L § 130.55), sexual misconduct (P.L. § 130.20), forcible touching (P.L. § 130.52), and other criminal sexual offenses under Article 130 of the Penal Law.

184. At all times, Defendant Hayes and the Enabling Defendants acted under color of law.

**COUNT ONE**
(EXCESSIVE FORCE UNDER THE FOURTH AND FOURTEENTH AMENDMENTS)
(Against Defendant Hayes)

185. Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

186. Defendant Hayes deprived Plaintiffs of their civil, constitutional, and statutory rights under color of law and is liable to Plaintiffs under 42 USC § 1983.

187. Defendant Hayes has deprived Plaintiffs of their right to be free of unreasonable searches and seizures, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, in that the Defendant Hayes used excessive and unreasonable force by her aforementioned conduct, including but not limited to her sexually abusing Plaintiffs.

188. As a direct and proximate result of this unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

189. Plaintiffs are therefore entitled to compensatory damages, punitive damages, as well as attorneys' fees and costs, against Defendant Hayes.

**COUNT TWO**
(EXCESSIVE FORCE UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS)
(Against Defendant Hayes)

190. Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

191. Defendant Hayes has deprived Plaintiffs of their civil, constitutional and statutory rights under color of law and are liable to Plaintiff under 42 USC 1983.

192. Defendant Hayes has deprived Plaintiffs of their rights, pursuant to the Eighth and Fourteenth Amendments to the United States Constitution, in that the Defendant Hayes used excessive and unreasonable force.

193. Defendant Hayes maliciously and sadistically used force against Plaintiffs for the very purpose of inflicting pain and/or harm.

194. As a direct and proximate result of this unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

195. Plaintiffs are therefore entitled to compensatory damages, punitive damages, as well as attorneys' fees and costs, against Defendant Hayes.

**COUNT THREE**
(CRUEL AND UNUSUAL PUNISHMENT UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS)
(Against Defendant Hayes)

196. Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

197. Defendant Hayes has deprived Plaintiffs of their civil, constitutional, and statutory rights under color of law and are liable to Plaintiffs under 42 USC 1983.

198. Defendant Hayes has deprived Plaintiffs of their right to be free from Cruel and Unusual Punishment, pursuant to the Eighth and Fourteenth Amendments to the United States Constitution, in that Defendant Hayes used cruel and unusual punishment by sexually abusing Plaintiffs as described above.

199. As a direct and proximate result of this unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

200. Plaintiffs are therefore entitled to compensatory damages, punitive damages, as well as attorneys' fees and costs, against Defendant Hayes.

**COUNT FOUR**
(COMMITTING AND ENABLING CRIMINAL AND CIVIL SEXUAL BATTERY)
(Against Defendants)

201. Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

202. During Plaintiffs' time as residents of Brookwood, Defendant Hayes intentionally, recklessly and wantonly did acts which were intended to, and did, result in harmful and offensive contact with intimate parts of Plaintiffs' persons and forcibly causing Plaintiffs to touch Defendant Hayes' intimate parts, including, but not limited to, being subjected to numerous instances of sexual abuse and sexual exploitation by Defendant Hayes, during Plaintiffs' time under the State of New York's care, custody, and control at Brookwood.

203. Defendant Hayes did the aforementioned acts with the intent to cause harmful or offensive contact with intimate parts of Plaintiffs' persons and/or her own intimate parts and would offend a reasonable sense of personal dignity. Further, said acts did cause a harmful or offensive contact with intimate parts of Plaintiffs' persons and/or Defendant Hayes' intimate parts that would offend a reasonable sense of personal

dignity.

204. Because of Defendant Hayes' position of status and authority over Plaintiffs, Plaintiffs did not give consent, and could not consent, to such acts and abuse.

205. As a direct, legal and proximate result of the acts of Defendant Hayes, Plaintiffs sustained serious and permanent injuries to their persons, all of this damage in an amount to be shown according to proof and within the jurisdiction of the court.

206. The Enabling Defendants knew that Defendant Hayes was acting in violation of Brookwood's policies when she obstructed her window when she met with Plaintiffs and other individuals alone in her office and met with them during her time off. Despite a duty to protect them, the Enabling Defendants did nothing to stop Defendant Hayes, thereby enabling Defendant Hayes to sexually abuse Plaintiffs and other residents of Brookwood.

207. As a direct and proximate result of the aforementioned sexual batteries, Plaintiffs have sustained in the past, and will continue to suffer in the future, physical injury, pain and suffering, serious psychological and emotional distress, mental anguish, embarrassment, and humiliation.

208. Accordingly, compensatory and punitive damages are necessary under these facts as to Defendants.

**COUNT FIVE**
(COMMITTING AND ENABLING CRIMINAL AND CIVIL SEXUAL ASSAULT)
(Against Defendants)

209. Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

210. At all times material hereto, the intentional physical conduct of Defendant Hayes, described herein above, placed Plaintiffs in imminent apprehension of harmful and injurious contact, including but not limited to, further and continued intentional and malicious sexual assaults, molestation, battery, abuse, and rape. Defendant Hayes' conduct constituted criminal sexual offenses under Article 130 of the Penal Code.

211. At all times material hereto, Defendant Hayes acted with reckless disregard for the safety and well-being of Plaintiffs.

212. At all times material hereto, Defendant Hayes acted willfully, wantonly, maliciously, and recklessly.

213. The Enabling Defendants knew that Defendant Hayes was acting in violation of Brookwood's policies when she obstructed her window when she met with Plaintiffs and other individuals alone in her office and met with them during her time off. Despite a duty to protect them, the Enabling Defendants did nothing to stop Defendant Hayes, thereby enabling Defendant Hayes to sexually abuse Plaintiffs and other residents of Brookwood.

214. As a direct and proximate result of the aforementioned sexual assaults, Plaintiffs have sustained in the past, and will sustain in the future, physical injury, pain and suffering, serious psychological and emotional distress, mental anguish, embarrassment, and humiliation.

215. Accordingly, compensatory and punitive damages are necessary under these facts as to Defendants.

**COUNT SIX**
(INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)
(Against Defendant Hayes)

216. Plaintiffs re-state and incorporate by reference each and every statement contained herein above as though fully set forth and brought in this cause of action.

217. Defendant Hayes' conduct toward Plaintiffs, as described herein, was outrageous and extreme, was done with the intent to cause, and/or was done with a disregard of a substantial likelihood of causing severe emotional distress and was the proximate cause of the extreme emotional distress suffered by Plaintiffs.

218. A reasonable person in Plaintiffs' positions would not expect or anticipate the sexual harassment, exploitation, molestation, and abuse by Defendant Hayes. Plaintiffs placed their trust, faith, and confidence in Defendant Hayes to properly and appropriately render medical care and treatment, which, by virtue of Defendant Hayes' wrongful conduct, turned to fear, abuse, shame, and humiliation.

219. As a result of the above-described conduct, Plaintiffs have suffered, and will continue to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, shame, humiliation, and loss of enjoyment of life; have suffered, and will continue to suffer, and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity; have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, for the extreme trauma that was inflicted upon them by Defendant Hayes.

220. In subjecting Plaintiffs to the wrongful treatment herein described, Defendant Hayes acted willfully and maliciously with the intent to harm Plaintiffs, and in conscious disregard of Plaintiffs' rights, so as to constitute malice and/or oppression. Plaintiffs are, therefore, entitled to recover punitive damages, in an amount to be determined by the Court, against Defendant Hayes.

**COUNT SEVEN**
(VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW N.Y. EXEC. LAW §290, et seq.)
(Against Defendant Hayes)

221. Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

222. Defendant Hayes discriminated against Plaintiffs in a place of public accommodation based on their gender, in violation of the New York State Human Rights Law, N.Y. EXEC. LAW §290, et seq., by subjecting them to sexual exploitation, sexual abuse, sexual assault, and sexual harassment. Defendant Hayes' conduct constitutes criminal sexual offenses under Article 130 of the Penal Law.

223. The discrimination suffered by Plaintiffs was severe. Defendant Hayes unlawful and gender-based discrimination against Plaintiffs caused them to suffer emotional and psychological distress, physical injury, mental anguish, loss of enjoyment of life, humiliation, shame, embarrassment, pain and suffering, and economic damages.

224. Defendant Hayes is liable to Plaintiffs for compensatory damages, punitive damages, attorneys' fees, and costs.

**COUNT EIGHT**
**(AIDING AND ABETTING VIOLATIONS OF THE NEW YORK STATE HUMAN RIGHTS LAW N.Y. EXEC LAW §290, ET SEQ.)**
(The Enabling Defendants)

225. Plaintiffs hereby repeat, reiterate and re-allege each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

226. The Enabling Defendants knowingly or recklessly aided and abetted the unlawful discrimination, in a place of public accommodation against Plaintiffs in violation of the New York State Human Rights Law.

227. As a direct and proximate result, Plaintiffs have suffered, and continue to suffer, monetary and/or economic damages, including but not limited to, loss future income, compensation and benefits for which they are entitled to an award of damages.

228. As a direct and proximate result, Plaintiffs have suffered, and continue to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which they are entitled to an award of damages.

229. The Enabling Defendants' unlawful actions constitute malicious, willful and wanton violations of the New York State Human Rights Law for which Plaintiffs are entitled to an award of punitive damages.

**COUNT NINE**
**(NEGLIGENCE)**
(Against the Enabling Defendants)

230. Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

231. At all times relevant herein, the Enabling Defendants' conduct was negligent in its disregard for the rights and safety of Plaintiffs.

232. The Enabling Defendants failed to take reasonable measures to keep Brookwood in a reasonably safe condition, including to protect inmates/residents, including Plaintiffs, from sexual abuse that was

foreseeable in light of the widespread, pervasive, and decades old environment of sexual assault of inmates.

233. Prior to the sexual abuse of Plaintiffs, the Enabling Defendants knew, reasonably should have known, or were otherwise careless (or reckless) in not knowing that correctional officers and other personnel or staff, including Defendant Hayes, posed a significant and foreseeable threat of sexual abuse to inmates including Plaintiffs.

234. Prior to the sexual abuse of Plaintiffs, the Enabling Defendants knew or should have known that Defendant Hayes was unfit to supervise inmates, including Plaintiffs.

235. As a result of the Enabling Defendants' acts and omissions described herein, including, but not limited to, allowing correctional officers and other personal staff, including Defendant Hayes, to be alone with inmates, including Plaintiffs, without adequate and reasonable supervision, monitoring or surveillance, the Enabling Defendants breached their duty to use reasonable care to protect inmates, including Plaintiffs, from reasonably foreseeable harm.

236. At all times relevant herein, Defendants failed to create, implement, and use policies and procedures to ensure that reports of sexual abuse of inmates, including Plaintiffs, could be made confidentially.

237. At all times herein relevant, the Enabling Defendants failed to create, implement, and use policies and procedures to ensure that inmates, including Plaintiffs, could report sexual abuse incidents without thereby subjecting themselves to reprisal, intimidation, punishment, threat, and/or repeated acts of sexual and/or physical abuse.

238. At all times relevant herein, the Enabling Defendants failed to reasonably investigate whether the inmates, including Plaintiffs, were free from sexual abuse by staff.

239. At all times relevant herein, the Enabling Defendants failed to report all alleged instances of sexual abuse to law enforcement or the appropriate entities.

240. At all times relevant herein, the Enabling Defendants failed to prevent and/or minimize the risk of sexual abuse, including the sexual conduct listed in Article 130 of the Penal Law, by its correctional staff, including Defendant Hayes.

241. Defendant Hayes would not have been in a position to sexually abuse Plaintiffs had Defendants not engaged in the acts and omissions described above and herein.

242. Defendants' acts and omissions described above were the proximate cause of, and a substantial contributing factor to, Plaintiffs' injuries and damages described herein.

**COUNT TEN**
**(NEGLIGENT HIRING)**
(Against the Enabling Defendants)

243. Plaintiffs repeat, reallege, and reaffirm the allegations above as if fully set forth herein.

244. The Enabling Defendants hired or retained Defendant Hayes and placed Defendant Hayes in a position to exert power, influence, authority, and control over inmates, including Plaintiffs, at Brookwood.

245. At all times herein relevant, the Enabling Defendants knew Defendant Hayes would be in situations where she would be alone within inmates, including Plaintiffs, where Defendant Hayes could sexually assault inmates, including Plaintiffs, without being detected, recorded, and/or seen.

246. At all times herein relevant, the Enabling Defendants knew Defendant Hayes had the propensity to commit acts of sexual abuse.

247. At all times relevant, the Enabling Defendants failed to create, implement, or use policies or procedures to investigate and screen applicants, including Defendant Hayes, to determine if applicants had criminal convictions, arrests, civil allegations, or personal histories evincing a propensity to commit sexual abuse or sexual harassment, or that otherwise render applicants, including Defendant Hayes, unfit to supervise inmates, including Plaintiffs.

248. Upon information and belief, the Enabling Defendants' knowledge of prior reports of abuse made against Defendant Hayes, which are in the Enabling Defendants' exclusive possession, further put defendants on notice of Defendant Hayes' propensities to commit sexual abuse against residents/inmates.

249. Defendant Hayes would not have been in position to sexually abuse Plaintiffs had Defendant Hayes not been hired by the Enabling Defendants or other personnel or staff.

250. Defendant Hayes would not have been in position to abuse Plaintiffs had Defendant Hayes been adequately and reasonably screened, investigated, and vetted before being hired by the Enabling Defendants or other personnel or staff.

251. The Enabling Defendants' acts and omissions described above were the proximate cause of, and a substantial factor to, Plaintiffs' injuries and the damages described herein.

**COUNT ELEVEN**
**(NEGLIGENT TRAINING)**
(Against the Enabling Defendants)

252. Plaintiffs repeat, reallege, and reaffirm the allegations as if fully set forth herein.

253. The Enabling Defendants hired Defendant Hayes and placed Defendant Hayes in a position to exert power, influence, authority, and control over inmates, including Plaintiffs at Brookwood.

254. At all times relevant herein, the Enabling Defendants knew Defendant Hayes could sexually assault inmates, including Plaintiffs, without being detected, recorded and/or seen.

255. At all times relevant herein, the Enabling Defendants knew Defendant Hayes had the propensity to commit acts of sexual abuse.

256. At all times relevant herein, the employee manual lacked clear and specific provisions regarding staff sexual contact with inmates that failed to set forth penalties for violations.

257. The widespread, pervasive, and decades-old environment of staff sexual abuse of inmates, as described herein including the hundreds of reports of sexual abuse made each year, put the Enabling Defendants on notice of the reasonable foreseeability of future sexual abuse by correctional officers, and other personnel or staff, including Defendant Hayes, such that the Enabling Defendants' failure to train Defendant Hayes after her hiring constitutes negligent training.

258. At all times relevant herein, the Enabling Defendants failed to adequately train its staff, including its superintendents, and other supervisors, to supervise and monitor its correctional officers, personnel, or other staff, including Defendant Hayes, to prevent, deter, and/or minimize the risk of sexual abuse.

259. At all times relevant herein, the Enabling Defendants failed to implement and maintain a sexual victimization prevention response policy or procedure and failed to train its staff on how to recognize and interrupt behavior that leads to sexual victimization.

260. Defendants' acts and omissions described above were the proximate cause of, and a substantial contributing factor to, Plaintiffs injuries and the damages described herein.

**COUNT TWELVE**
**(NEGLIGENT RETENTION)**
(Against the Enabling Defendants)

261. Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

262. The Enabling Defendants hired Defendant Hayes and placed Defendant Hayes in a position to exert power, influence, authority, and control over inmates, including Plaintiffs at Brookwood.

263. At all times relevant herein, the Enabling Defendants knew Defendant Hayes would be in situations where Defendant Hayes would be alone with inmates, including Plaintiffs, where Defendant Hayes could sexually assault inmates, including Plaintiffs, without being recorded or seen.

264. At all times relevant herein, the Enabling Defendants knew Defendant Hayes sexually abused Plaintiffs and others.

265. In accordance with the 2021 Report detailed above, the Enabling Defendants had a duty to terminate or otherwise remove Defendant Hayes after learning of the abuse of Plaintiffs and others.

266. Allowing Defendant Hayes to continue to interact with Plaintiffs, as described herein, breaches the Enabling Defendants' duty to report sexual abuse and thus constitutes negligent retention.

267. The Enabling Defendants' acts and omissions described above were the proximate cause of, and a substantial contributing factor to, Plaintiffs' injuries and damages described herein.

**COUNT THIRTEEN**
**(NEGLIGENT SUPERVISION)**
(The Enabling Defendants)

268. Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

269. The Enabling Defendants hired Defendant Hayes and placed Defendant Hayes in a position to exert power, influence, authority, and control over inmates, including Plaintiffs at Brookwood.

270. At all times relevant herein, the Enabling Defendants knew Defendant Hayes would be in situations where Defendant Hayes would be alone with inmates, including Plaintiffs, where Defendant Hayes could sexually assault inmates, including Plaintiffs, without being recorded or seen.

271. Had the Enabling Defendants supervised and monitored Defendant Hayes while Defendant Hayes was discharging her duties and interacting with inmates, including Plaintiffs, the Enabling Defendants would have discovered Defendant Hayes' propensity to commit sexual abuse or sexual harassment or would have otherwise discovered Defendant Hayes was unfit to continue to supervise inmates, including Plaintiffs.

272. At all times relevant herein, the Enabling Defendants failed to adequately train its staff, including its superintendents and other supervisors, to adequately supervise and monitor its correctional officers, personnel, or other staff, including Defendant Hayes, to prevent them from committing acts of sexual abuse.

273. At all times relevant herein, the Enabling Defendants were negligent in their direction, supervision, and monitoring of Defendant Hayes in that the Enabling Defendants knew or reasonably should have known, through the exercise of ordinary care, that Defendant Hayes' conduct would subject inmates, including Plaintiffs, to an unreasonable risk of harm.

274. At all times relevant herein, the Enabling Defendants failed to install, set up, and maintain video surveillance to deter, prevent and detect sexual abuse by its correctional officers and other personnel or staff, including Defendant Hayes.

275. At all times relevant herein, the Enabling Defendants failed to have any of supervisors or other staff supervise and monitor correctional officers and other personnel or staff, including Defendant Hayes, to deter, prevent, detect, or otherwise minimize the risk of sexual abuse by its correctional officers and other personnel or staff, including Defendant Hayes.

276. The widespread, pervasive and decades-old environment of staff sexual abuse of inmates as described above, including the hundreds of reports of sexual abuse made each year, put the Enabling Defendants on notice of the reasonable foreseeability of future sexual abuse by correctional officers and

other personnel or staff, including Defendant Hayes, such that the Enabling Defendants' failure to install and maintain video surveillance or to have supervisors or other staff supervise and monitor correctional officers and other personnel or staff in order to deter and prevent sexual abuse, constitutes negligent supervision.

277. Upon information and belief, the Enabling Defendants' knowledge of prior reports of abuse made against Defendant Hayes, which are in the Enabling Defendants' exclusive possession, further put the Enabling Defendants on notice of Defendant Hayes' propensity to commit sexual abuse against inmates.

278. At all times relevant herein, the Enabling Defendants, in the exercise of adequate reasonable oversight, knew or should have known that inmates including Plaintiffs were being sexually abused by correction officers, personnel or other staff, including Defendant Hayes.

279. Correctional officers and other personnel or staff, including Defendant Hayes, responsible for sexually abusing inmates, including Plaintiffs, would not have been in a position to sexually abuse inmates, including Plaintiffs, had it not been for the Enabling Defendants' negligent supervision, direction, and monitoring of their correctional officers and other personnel or staff, including Defendant Hayes, superintendents, supervisors, and other employees, as described above and herein.

280. Defendant Hayes would not have sexually abused Plaintiffs had Defendant Hayes been adequately supervised and monitored while supervising inmates, including Plaintiffs.

281. The Enabling Defendants' acts and omissions described above were the proximate cause of, and/or a substantial contributing factor to, Plaintiffs' injuries and damages described herein.

**COUNT FOURTEEN**
**(Failure to Intervene)**
(The Enabling Defendants)

282. Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

283. The Enabling Defendants were present but they did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

284. Accordingly, the Enabling Defendants who failed to intervene violated the Fourth and Fourteenth Amendments.

285. As a direct and proximate result of this unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

## JURY DEMAND

286. Plaintiffs hereby demand a trial by jury on all issues as permitted by law.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs demand judgment against Defendants and request the following relief:

a. compensatory damages for Plaintiffs for the severe emotional distress, humiliation, anguish, loss of earnings and earning capacity, and expenses for medical and psychological treatment, therapy, and counseling suffered on account of Defendants' unlawful conduct.

b. punitive damages on account of Defendants' conduct toward Plaintiffs;

c. reasonable costs and attorneys' fees incurred in the litigation of this matter, including all time incurred in the effort to resolve the matter pre-litigation, pursuant to statute and case law; and

d. such other relief as the Court deems just and proper.

Dated: New York, New York
February 27, 2025

BRUSTEIN LAW, P.L.L.C.

By: ___*/s/ Evan Brustein*___
Evan Brustein, Esq.
299 Broadway, 17th Floor
New York, New York 10007
T. (917) 769-8748
E. evan@brusteinlaw.com
*Counsel for Plaintiffs*

CONDE LAW FIRM PLLC

___*/s/ Marion Conde da Silveira*_
Marion Conde de Silveira, Esq.
299 Broadway, 17th Floor
New York, New York 10007

T. (917) 909-1863
E. Marion_Conde@yahoo.com
*Counsel for Plaintiffs*